**United States District Court**
For the Northern District of California

1
2
3
4
5          UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8    UNITED STATES OF AMERICA,                    No. C-09-4085 EMC

9              Plaintiff,

10         v.                                     **ORDER GRANTING PLAINTIFF'S**
                                                  **MOTION FOR DEFAULT JUDGMENT**
11   SETH C. SUNDBERG a/k/a FRANCO                **AGAINST DEFENDANT SETH C.**
     METCALF and RASHEA ROBERTS,                  **SUNDBERG**
12
              Defendants.                         **(Docket No. 37)**
13
     _____/
14

15

16         The United States initiated this lawsuit to recover the outstanding federal tax liabilities

17   assessed against Defendant Seth Sundberg pursuant to 26 U.S.C. §§ 6321, 6322, 6331(a) and the

18   money he transferred to Defendant Rashea Roberts pursuant to 28 U.S.C. §§ 3304(b)(1), 3306(a),

19   3307(b).  *See* Docket No. 1 (complaint).  As Mr. Sundberg and Ms. Roberts failed to answer, default

20   was entered against them on November 19, 2010, and January 20, 2011, respectively, and the United

21   States moved for default judgment on March 3, 2011.  *See* Docket Nos. 31, 35, 37.  Ms. Roberts then

22   made an appearance, filed an opposition, and later stipulated to have judgment entered against her,

23   which this Court granted.  *See* Docket Nos. 39, 40, 64, 65.  This Court held a hearing on the motion

24   for default judgment on August 1, 2011, at which Mr. Sundberg did not appear, nor did he file any

25   opposition.  Having considered the United States' briefs, accompanying submissions, and statements

26   on the record, the Court hereby **GRANTS** the motion for default judgment against Mr. Sundberg.

27   ///

28   ///

**United States District Court**
For the Northern District of California

# I.   FACTUAL & PROCEDURAL BACKGROUND

On September 2, 2009, the United States brought this action against Mr. Sundberg and his fiancée, Ms. Roberts, asserting three claims for relief: (1) to reduce the original assessment of $5,086,978 against Mr. Sundberg to judgment; (2) to obtain a money judgment of $26,000 against Ms. Roberts as a fraudulent transferee; and (3) to have the falsely-obtained federal tax refund proceeds received by Mr. Sundberg and Ms. Roberts held in constructive trust for the benefit of the United States.  *See* Docket No. 1 (complaint).

The United States alleges the following.  On or about April 14, 2009, Mr. Sundberg filed his federal individual income tax return for the tax year 2008 with the Internal Revenue Service (IRS). Compl. ¶ 8.  On the attached "Interest and Ordinary Dividends" worksheet (Schedule B), Mr. Sundberg claimed $5,732,580 in original issue discount ("OID") interest from a number of sources and made a negative "OID" adjustment in the amount of "(5,732,441)," resulting in a reported taxable interest income of $139.  *Id.* at ¶ 9.  Further, he claimed a total gross income of "($135,681)" and Form 1099 OID withholdings of $5,087,059, resulting in a reported tax overpayment of $5,084,010.  *Id.*  Based solely on Mr. Sundberg's tax return, the IRS issued a $5,083,609.25 refund to him on June 1, 2009 ($400.75 of the false refund was offset against a 2007 income tax liability). *Id.* at ¶ 14.  Mr. Sundberg's actions constitute "abusive tax reporting," commonly referred to as a "Form 1099-OID" fraudulent refund scheme.  *Id.* at ¶ 10.  The scheme proceeds as follows:

> [A] debt instrument is issued at a price less than the stated principal amount [and] the difference represents the OID.  For example, a debt instrument with a stated redemption price of $1,000 and an issue price of $750 has $250 of OID.  For tax purposes, OID is treated as interest, which must be included in the lender's income as it accrues over the term of the debt instrument.
>
> . . . Under a typical Form 1099-OID refund scheme (similar to the one employed by [Mr.] Sundberg in this instant action), a taxpayer claims to have either issued or purchased a debt instrument that generated OID interest income.  The taxpayer further claims that federal income taxes were withheld by the borrower for the full amount of the OID interest income purportedly earned by the taxpayer.  The taxpayer then reports the total amount of the false withholding (and sometimes the false OID interest income) on their income tax return, resulting in a large (and completely unsubstantiated) refund.

United States District Court

For the Northern District of California

1    *Id.* at ¶¶ 10-11.  The withholding of $5,087,059 is unsupported and unsubstantiated because Mr.

2    Sundberg did not provide the IRS, nor did any third party payer-borrower, with the requisite

3    documentation.  *Id.* at ¶¶ 12-13.  Thus, the $5,083,609.25 refund was falsely obtained.  *Id.*

4          Further, the United States alleges that on June 3, 2009, Mr. Sundberg opened two bank

5    accounts with Borel Private Bank and Trust, using the falsely-obtained refund as initial deposits.  *Id.*

6    at ¶ 14.  Mr. Sundberg deposited $2,583,609.25 into a bank account ending in 4521 and the

7    remaining $2,500,000 into a second bank account ending in 4501.  *Id.*  Over the course of the

8    following month, Mr. Sundberg transferred nearly all of the money from each account in the form of

9    cashier's checks made payable to himself, the Acts Revival Center, the Dream Center, and Ms.

10   Roberts.  *Id.* at ¶¶ 15, 16, 17.  Ms. Roberts received a total of $26,000 from Mr. Sundberg.  Mot. for

11   Default Judgment, 5:19, 6:2.  On July 24, 2009, a delegate of the Secretary of the Treasury made an

12   assessment of $5,086,978 plus $29,648.12 interest against Mr. Sundberg, and a few days later, the

13   IRS gave notice to and demanded payment from Mr. Sundberg for the total of $5,116,626.12.  *Id.* at

14   ¶ 18; Docket No. 4, Ex. I (Notice of Tax Due on Federal Tax Return and Notice of Jeopardy Levy).

15         On September 2, 2009, the United States filed its complaint and motion for a temporary

16   restraining order against Mr. Sundberg and Ms. Roberts and personally served each Defendant on

17   September 9, 2009 with the complaint, temporary restraining order, and an order to attend a show

18   cause hearing five days later.  *See* Docket Nos. 1, 2, 5, 10, 11.  Mr. Sundberg and Ms. Roberts each

19   failed to file an answer within the 20-day period prescribed by Fed. R. Civ. P. 12(a).  Neither Mr.

20   Sundberg nor Ms. Roberts attended the hearing; the Court issued a preliminary injunction against

21   Ms. Roberts but continued the hearing as to Mr. Sundberg.  *Id.* at 15, 16, 17.  On October, 2, 2009,

22   the Court entered a preliminary injunction against Mr. Sundberg, who again failed to appear, and

23   stayed the instant case, pending resolution of the parallel criminal case against Mr. Sundberg.  *Id.* at

24   21, 22, 23; *see also United States v. Sundberg,* No. CR-09-00928-001 JF (N.D. Cal. filed Sept. 23,

25   2009) (LEXIS, U.S. Dist., Criminal Filings).

26         For over a year, there was little action in the instant case.  On November 19, 2010, default

27   was entered against Mr. Sundberg and on January 20, 2011, against Ms. Roberts.  *See* Docket Nos.

28   31, 35.  The United States moved for default judgment against both Defendants on March 3, 2011.

1   *Id.* at 37.  In support of its motion, the United States submitted IRS Certificate of Assessments and

2   Payments (IRS Form 4340) showing the original assessment of $5,086,978 plus $29,648.12 interest

3   made against Mr. Sundberg on July 24, 2009.  *See id.* at Ex. 1 (Newman Decl., Ex. 1).  In addition,

4   the United States attached the declaration of IRS employee Paul Enjalran who calculated the

5   outstanding balance owed by Mr. Sundberg as of March 31, 2011, summarized as follows:

| Tax Type | Tax Period | Amount Assessed | Accrued Interest | Balance Due as of 3/31/2011 |
|----------|-----------|-----------------|------------------|------------------------------|
| Income (1040) | 2008 | $2,521,982.25 | $667,048.64 | $3,189,030.89 |
| | | | **Total Balance Due as of 3/31/2011** | $3,189,030.89 |

10   *See* Mot. for Default Judgment, 8:21-24, Ex. 2 (Enjalran Decl., ¶ 3).  At the Court's request, the

11   United States supplemented this outstanding balance owed on the assessment with statutory interest

12   calculated through August 31, 2011.  *See* Enjalran Supp. Decl., Docket No. 68-1, Exh. A.  The

13   United States explains that the current balance owed is less than the original amount assessed of

14   $5,087,059 because "it reflects payments and credits that have been posted to the account by virtue

15   of IRS levies," including levies of banks and businesses as well as seizures from the criminal

16   investigation.  *See* Mot. for Default Judgment, 9:1-2; Enjalran Supp. Decl., Exh. B.  As such, the

17   United States asks the Court to enter default judgment against Mr. Sundberg for $2,521,982.25 plus

18   statutory interest and penalties of $837,607.79.  *See id.* at 14:2-4; Enjalran Supp. Decl.  ¶ 4.

19       While Mr. Sundberg has not yet appeared or responded to this motion, Ms. Roberts made an

20   appearance and, acting without counsel, filed an opposition.  *See* Docket Nos. 37, 39, 40.  Upon

21   retaining pro bono counsel, Ms. Roberts stipulated to have judgment entered against her, which this

22   Court granted.  *See* Docket Nos. 48, 57, 64, 65.  This Court held a hearing on this motion on August

23   1, 2011, at which Mr. Sundberg did not appear, nor did he file any opposition.

**II.   DISCUSSION**

24

25   A.   Adequacy of Service of Process

26       First, the Court must "assess the adequacy of the service of process on the party against

27   whom default is requested."  *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-

28   00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Dec. 29, 2000).  Service may be

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1   effected upon an individual within the United States by "delivering a copy of the summons and of

2   the complaint to the individual personally."  *See* Fed. R. Civ. P 4(e)(2)(A).  On September 9, 2009,

3   the United States personally served Mr. Sundberg with the complaint and summons, and on March

4   3, 2011, the United States filed a proof of service of this motion on Mr. Sundberg.  *See* Docket Nos.

5   11, 37, Ex. 3.  Notwithstanding his failure to respond, service on Mr. Sundberg was proper.

6   B.   <u>Legal Standard</u>

7       After entry of default, the Court may grant a default judgment on the merits of the case.  *See*

8   Fed. R. Civ. P. 55.  The "decision whether to enter a default judgment is a discretionary one" as a

9   defendant's default alone does not entitle a plaintiff to a court-ordered judgment.  *Aldabe v. Aldabe*,

10  616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising that discretion, the Court considers the following

11  factors:

12          (1) the possibility of prejudice to the plaintiff; (2) the merits of
            plaintiff's substantive claim; (3) the sufficiency of the complaint; (4)
13          the sum of money at stake in the action; (5) the possibility of a dispute
            concerning material facts; (6) whether the default was due to
14          excusable neglect; and, (7) the strong policy underlying the Federal
            Rules of Civil Procedure favoring decisions on the merits.
15

16  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, upon entry of default, a

17  court must take as true all factual allegations in the complaint except those related to the amount of

18  damages.  *See Fair Hous. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002); *Geddes v. United*

19  *Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

20  However, "necessary facts not contained in the pleadings, and claims which are legally insufficient,

21  are not established by default."  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

22  C.   <u>Merits of Motion for Default Judgment Against Mr. Sundberg</u>

23      In the instant case, the *Eitel* factors weigh in favor of default judgment.  As to the first factor,

24  the United States will suffer prejudice because Mr. Sundberg has failed to appear or respond to this

25  action and the United States will likely be unable to have a final resolution on its tax claims without

26  a default judgment.  *See O'Brien v. United States,* No. 2:07-cv-00986-GMN-GWF, 2010 U.S. Dist.

27  LEXIS 101941, *11 (D. Nev. Sept. 9, 2010) (finding defendant's failure to appear and defend

28  against the case delayed the judicial process, and without default judgment, the government "cannot

5

have a final resolution of its tax claims, and thus will suffer prejudice."); *Walters v.*

*Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny [the] motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claims.").

        The second and third factors require that the United States' allegations state a claim upon which it can recover. *See Danning*, 572 F.2d at 1388. Here, the United States seeks to reduce to judgment the assessment of $2,521,982.25 made against Mr. Sundberg plus the statutory accruals of interest and penalties through August 31, 2011 in the amount of $837,607.79. *See* Mot. for Default Judgment, 14:2-3; Enjalran Supp. Decl. ¶ 4. The United States will be able to recover because it has established (1) the statutory authority to bring this action, (2) the nature of the tax assessments and monetary amounts at issue, and (3) that the statutory notice requirements for properly assessing tax liabilities have been met. *See O'Brien,* 2010 U.S. Dist. LEXIS 101941, *12 (finding the second and third *Eitel* factors weigh in favor of default judgment where the United States establishes these three factors). First, the United States is statutorily authorized under 26 U.S.C. § 7401 to bring this action on behalf of the IRS to collect outstanding federal tax liabilities pursuant to 26 U.S.C. §§ 6321, 6322, 6331(a). *See* Mot. for Default Judgment, 11:4-5, 7-8. District courts have jurisdiction to "render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws" under 26 U.S.C. § 7402(a). Next, the nature and amount of the tax assessment made against Mr. Sundberg represents his outstanding tax liability, namely, the falsely-obtained federal income tax refund he received as a result of his tax scheme, which the United States substantiates with the IRS Certificates of Assessments and Payments (IRS Form 4340) attached to its motion for default judgment. *See* Newman Decl., Ex. 1. The Ninth Circuit has affirmed that IRS Forms 4340 are a proper means for establishing the facts and amount of the assessment, notice and demand for payment, and qualify as public records under Federal Rule of Evidence 803(8). *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (finding a IRS Form 4340 certificate of assessment "is probative evidence in and of itself and, in the absence of contrary evidence, [is] sufficient to establish that notices and assessments were properly made.") (internal quotations omitted); *Hughes v. United States*, 953 F.2d 531, 540 (1991). Further, the United States is entitled

United States District Court

For the Northern District of California

1   to the statutory accrual of interest on the tax liability under 26 U.S.C. § 6601 at the rate determined

2   in accordance with section 6621, with interest compounded daily under section 6622.  *See* Enjalran

3   Supp. Decl. ¶¶ 2-5.  Lastly, pursuant to I.R.C. § 6331, Mr. Enjalran gave notice and demanded

4   payment for the assessment made against Mr. Sundberg, which he has failed to pay.  *See Hansen,* 7

5   F.3d at 138*; see also* Compl. ¶ 18, Docket No. 4, Ex. 1 (Notice of Tax Due on Federal Tax Return,

6   IRS Form 3552, and Notice of Jeopardy Levy and Right to Appeal, IRS Letter 2439).  Thus, the

7   merits of the substantive claim and sufficiency of the complaint weigh in favor of default judgment.

8        As to the fourth factor, the Court must consider "the amount of money at stake in relation to

9   the seriousness of defendant's conduct."  *Board of Trustees of the N. Cal. Sheet Metal Workers v.*

10  *Peter*s, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, *5 (N.D. Cal., Dec. 29, 2000); *see also*

11  *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 U.S. Dist. LEXIS 38642,

12  2007 U.S. Dist. LEXIS 100237, at *32 (N.D. Cal. May 29, 2007) ("Default judgment is disfavored

13  where the sum of money at stake is too large or unreasonable in light of defendant's actions.").  In

14  the instant case, the sum of money at stake--$2,521,982.25 plus statutory interest--represents the

15  extent of Mr. Sundberg's tax liabilities, namely, the amount he received from filing a fraudulent tax

16  return, less the payments and credits posted by virtue of the IRS levies.  *See* Mot. for Default

17  Judgment, 8:26-27, 9:1-2.  While the amount is substantial, it is tailored to Mr. Sundberg's specific

18  misconduct.  *See O'Brien*, 2010 U.S. Dist. LEXIS 101941, at *12 (finding that while the sum of

19  money at stake is substantial, over $3 million, it did not weigh against granting default judgment

20  because it reflected only the amount defendant owed in unpaid taxes and interest to which the

21  United States is entitled); *Board of Trustees of the N. Cal. Sheet Metal Workers*, 2000 U.S. Dist.

22  LEXIS 19065, *5 (holding this factor favors default judgment where "[t]he amount at stake is minor

23  in comparison to the potential loss . . . as a result of defendants' conduct.").  Thus, this factor does

24  not weigh against granting default judgment.

25       As to the possibility of a dispute concerning material facts, the fifth *Eitel* factor, there is little

26  to suggest that the material facts of the instant case would reasonably be subject to dispute because

27  the United States has alleged sufficient facts and the IRS assessment is based on tax forms filed by

28  Mr. Sundberg, who has failed to answer or otherwise respond to this action.  *See United States v.*

**United States District Court**
For the Northern District of California

1 | *Reed*, No. C 10-4676 RS, 2011 U.S. Dist. LEXIS 50720, at *4 (N.D. Cal. Apr. 15, 2011 (finding this
2 | factor weighs in favor of default judgment where the merits are well-established and the amount
3 | assessed by IRS based on tax forms completed by defendant).

4 | As to the sixth factor, there is no support for finding that Mr. Sundberg's default is due to
5 | excusable neglect because nineteen months have passed since he was served with the complaint and
6 | summons and upon being detained in a federal correctional facility, with the notice of entry of
7 | default as well as the motion for default judgment. *See* Docket Nos. 11, 29, 37, Ex. 3. Nevertheless,
8 | Mr. Sundberg has failed to answer or otherwise respond and has not offered any excuse explaining
9 | his nonappearance. *See Marcelos v. Dominguez*, No. C 08-00056 WHA, 2009 U.S. Dist. LEXIS
10 | 5306, *14 (N.D. Cal. Jan. 16, 2009) (finding incarcerated defendant's nonappearance and default
11 | unlikely the result of excusable neglect because defendant was properly served a copy of the
12 | summons while in jail); *Hu v. Lee*, No. 09-2588 SC, 2010 U.S. Dist. LEXIS 136601, *6-7 n.4 (N.D.
13 | Cal. Sept. 20, 2010) (finding factor weighs in favor of default judgment where defendants did not
14 | formally appear and made no showing of excusable neglect); *United States v. Moss,* C-07-4632 JSW
15 | (EMC), 2008 U.S. Dist. LEXIS 109884, *6 (N.D. Cal. Apr. 2, 2008) (finding no excusable neglect
16 | where defendants were served with summons and complaint as well as the entry of default and
17 | motion for default judgment).

18 | The final *Eitel* factor, underscoring the policy favoring decisions on the merits, does not save
19 | this action from default judgment as Mr. Sundberg's nonappearance makes it clear that this case is
20 | unlikely to be decided on the merits. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,
21 | 1177 (C.D. Cal. 2002) ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing on the
22 | merits is allowed whenever a defendant fails to defend an action. . .[as] a [d]efendant's failure to
23 | answer [p]laintiff's [c]omplaint makes a decision on the merits impractical, if not impossible.").

24 | Accordingly, the Court finds the *Eitel* factors weigh in favor of granting default judgment
25 | against Mr. Sundberg. Because default judgment is warranted in this case, the Court must then
26 | determine the amount of damages. *See* Fed. R. Civ. P. 55(b)(2) (providing courts with discretion as
27 | to whether to hold a hearing on damages or to order default judgment without a hearing). The
28 | moving party has the burden to prove up damages. *Amini Innovation Corp. v. KTY Intern.*

**United States District Court**

For the Northern District of California

1    *Marketing*, 768 F. Supp. 2d 1049, 1053-54 (C.D. Cal. 2011) ("If the plaintiff is seeking money

2    damages . . . the plaintiff must "prove-up" its damages.").  Where the amount of damages is

3    "liquidated or capable of ascertainment from definite figures contained in documentary evidence or

4    detailed affidavits," the Court may enter default judgment without a hearing on damages.  *Dundee*

5    *Cement Co. v. Howard Pipe & Concrete Prods., Inc*., 722 F.2d 1319, 1323 (7th Cir. 1983); *see also*

6    *Pope*, 323 U.S. at 12 ("It is a familiar practice and an exercise of judicial power for a court upon

7    default, by taking evidence when necessary or by computation from facts of record, to fix the

8    amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

9         In the instant case, the United States submitted the IRS Form 4340, which properly

10    establishes the facts and amount of the assessment and notice and demand for payment, and qualify

11    as public records under Federal Rule of Evidence 803(8).  *See Hansen*, 7 F.3d at 138; *Hughes*, 953

12    F.2d at 539-40.  In submitting Form 4340 together with declarations from IRS Revenue Officer

13    Enjalran describing the balances owed by Defendant, *see* Docket No. 37, Exh. 2; Docket No. 68,

14    Exh. 1, the United Sates has proffered admissible evidence in support of its damages claim.  *See*

15    *Hughes*, 953 F.2d at 535, 539-40 (finding that the Form 4340 is admissible, probative evidence of

16    the fact that a valid assessment was made); *U.S. v. Weldon*, No. 1:08–cv–01643, 2010 WL 682492,

17    at *4 (E.D. Cal. Feb. 24, 2010) (finding that Form 4340, absent evidence to the contrary,

18    "conclusively demonstrate[d] . . . the unpaid balances due on the relevant assessments against

19    [Defendant]"); *United States  v. Bentley*, 756 F. Supp.2d 1, 3 (D.D.C. 2010) (accepting declarations

20    as to the amount of unpaid employment taxes due as sufficient evidence of damages for default

21    judgment).  In addition to the current balance of the federal tax liability assessment of

22    $2,521,982.25, the United States asks the Court for the interest accruing on this assessment under 26

23    U.S.C. § 6601 at the rate determined in accordance with section 6621(a)(2) with interest

24    compounded daily under section 6622.  *See* Mot. for Default Judgment, 8:6-7; Enjalran Decl. ¶ 3.

25    The United States submitted supplementary materials to update the outstanding balance owed by

26    Mr. Sundberg on the assessment with interest calculated through August 31, 2011, which properly

27    establishes the accrual of interest on the assessment.  *See* Docket No. 68.  According to those

28    materials, the total owed by Mr. Sundberg as of August 15, 2011 is $3,359,590.04, which is less

than the original assessment because of the credits posted to the account by virtue of IRS levies. *See* Enjalran Supp. Decl. ¶ 4; *id.* at Exh. B. The Court finds the above evidence sufficient to grant default judgment against Mr. Sundberg in the amount of $2,521,982.15 plus statutory interest and penalties of $837,607.79 (as of August 31, 2011), which will compound daily pursuant to 26 U.S.C. § 6622 until paid in full.

### III.   CONCLUSION

For the foregoing reasons, the Court grants the United States' motion for default judgment against Mr. Sundberg and orders that judgment be entered in favor of the United States and against Defendant Seth C. Sundberg in the amount of $3,359,590.04, plus additional statutory interest to accrue from August 31, 2011, under 28 U.S.C. § 1961(c), 26 U.S.C. §§ 6601, 6621, until paid in full. The Clerk of Court shall enter judgment accordingly.

Because the Court has already entered judgment against Ms. Roberts pursuant to a stipulation, Docket Nos. 65, 66, the Court denies as moot the United States' motion for default judgment as to Ms. Roberts, Docket No. 37, and denies as moot Ms. Roberts's motions to appoint counsel, Docket No. 39, to sever, Docket No. 48, and to set aside default, Docket No. 57.

This disposes of Docket Nos. 37, 39, 48, and 57.


IT IS SO ORDERED.


Dated:  August 22, 2011

_____
EDWARD M. CHEN
United States District Judge